IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RITA A. CANN,                          )
                                       )
                Plaintiff,             )
                                       )    CIVIL ACTION
v.                                     )
                                       )    No. 08-4018-SAC-DWB
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                Defendant.             )
_____)


## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423(hereinafter the Act). The court recommends the decision of the Commissioner be REVERSED and the case be REMANDED for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.   Background**

Plaintiff applied for DIB on July 12, 2005 alleging disability beginning Feb. 28, 1994. (R. 18, 70-74).[1] Her

---

[1]The Commissioner's "List of Exhibits" is deficient in identifying the exhibits in Sections A, B, and D of the 824-page administrative record filed in this case. (R. 1B-3). The Commissioner's "List of Exhibits" treats each of Sections A, B, and D of the administrative record as but a single exhibit,

application was denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ). (R. 26A-27, 43-44).  Plaintiff's request was granted, and a hearing was held at which plaintiff was represented by counsel. (R. 18, 783-824).  At the hearing, testimony was taken from plaintiff, plaintiff's husband, a medical expert (ME), and a vocational expert (VE).  (R. 18, 783-84).

On Sept. 13, 2007, ALJ Linda L. Sybrant issued a decision finding plaintiff was not under a disability as defined in the Act at any time after her alleged onset date of Feb. 28, 1994 and through her date last insured, Mar. 31, 2002.  (R. 18-25). Specifically, the ALJ found that plaintiff did not engage in substantial gainful activity, and had severe impairments of fibromyalgia, depression, and substance abuse during the relevant time period, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  (R. 20-22).  The ALJ found plaintiff's

---

although those sections consist of many separate exhibits. Compare (R. 1B-3), with (R. 26-74).  Contrary to the Commissioner's practice in this case, D. Kan. Rule 7.6(a)(4) requires that an index of the "separately labeled" exhibits attached to briefs or memoranda be provided to the court.  The Commissioner may not avoid the stricture of the local rule merely by failing to separately identify the individual exhibits, and instead "separately labeling" as a single unit, an entire group of exhibits.  Nonetheless, the court has searched out the applicable documents and provided pinpoint citations herein.

allegations regarding her symptoms not credible, and concluded that during the relevant time plaintiff had the residual functional capacity (RFC) to perform a range of light work limited to simple, routine work; walking only for fifteen minutes at a time, and allowing for a sit/stand option; only occasionally stooping, crouching, crawling, and kneeling; and never climbing ladders, ropes, or scaffolds, or being exposed to temperature extremes or airborne irritants.  (R. 22-23).

She found plaintiff was unable to perform her past relevant work during the relevant time, but that there existed a significant number of jobs in the national economy that were within plaintiff's RFC.  (R. 23-24).  Therefore, she found plaintiff was not disabled within the meaning of the Act, and denied her application for DIB.  (R. 24-25).

Plaintiff disagreed with the ALJ's decision, sought review by the Appeals Council, and submitted a brief outlining her disagreement.  (R. 13-14, 779-82).  The Appeals Council found that plaintiff's brief did not provide a basis to change the ALJ's decision and denied the request for review.  (R. 9-11).[2]

---

[2]The "Action of the Appeals Council on Request for Review" was filed in this case within Attachment #7 "Supplement" to the Commissioner's answer.  Attachment #7 consists of seven miscellaneous pages of the administrative record which were apparently not included in page number order within the previous six attachments to the Commissioner's answer.  (Doc. 9, Attach. #7).  Additionally, the court notes that attachments #5 and #6 are out of sequence.  Id., Attachs. #5, #6.

Therefore, the ALJ's decision is the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it

-4-

constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v.</u>
<u>Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  <u>Id.</u>

The Commissioner uses a five-step sequential process to
evaluate whether a claimant is disabled.  20 C.F.R. § 416.920
(2007); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004);
<u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of
the steps that a claimant is or is not disabled, evaluation under
a subsequent step is not necessary."  <u>Williams v. Bowen</u>, 844 F.2d
748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments, and
whether the severity of her impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If

-5-

plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in not finding plaintiff's headaches or back impairment severe; in improperly evaluating the medical opinions of treating physician, Dr. Iliff, and medical expert (ME), Dr. Rubini; in considering the credibility of plaintiff's allegations of disabling symptoms; in assessing plaintiff's mental and physical RFC; and in failing to resolve discrepancies in the VE testimony.  The Commissioner argues that the record does not show significant limitations resulting from headaches or back impairment; that the ALJ properly found Dr. Iliff's opinion unworthy of controlling weight, and appropriately

considered the ME's opinion; properly determined the credibility of plaintiff's allegations based upon substantial evidence in the record; and properly assessed and explained plaintiff's RFC based upon substantial evidence in the record.  The court will address each issue as it would be reached in applying the sequential evaluation process.  Because the credibility of plaintiff's allegations affects the step two analysis in this case, the court begins with consideration of the ALJ's credibility determination.

## III. Credibility

In evaluating the credibility of a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993).

The Commissioner promulgated regulations suggesting factors to be considered in evaluating credibility.  20 C.F.R. § 404.1529(c)(3)(i-vii).  Those factors overlap and expand the factors stated in Luna:  Daily activities; location, duration,

frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.   20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Hackett, 395 F.3d at 1173(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

The ALJ found plaintiff's testimony regarding disabling symptoms not credible.  (R. 23).  She gave six reasons to support her credibility determination:  (1) The limitations alleged are not supported by the objective medical evidence.  (2) The limitations alleged are not supported by the ME's testimony.

-8-

(3) Plaintiff's mental impairments were often driven by alcohol abuse.  (4) Plaintiff appears to have abused, or attempted to abuse, prescription drugs.  (5) Claimant did not file her application until more than ten years after the alleged onset date.  And, (6) plaintiff's sporadic work history with low earnings does not show a motivation to work.  Id.

Plaintiff claims error in the credibility determination, alleging the reasons given by the ALJ for discounting plaintiff's credibility are not supported by substantial evidence in the record.  She attacks each reason given, and argues that the ALJ also erred in failing to specifically discuss the side effects resulting from plaintiff's medication and plaintiff's persistent efforts to obtain pain relief.  The Commissioner argues that the credibility determination was proper, the ALJ articulated the reasons for discounting the credibility of plaintiff's allegations, and substantial evidence in the record supports the ALJ's determination.  The court agrees with plaintiff that several of the reasons given by the ALJ to discount plaintiff's credibility cannot stand.

First, the ALJ found that plaintiff's combination of severe impairments includes fibromyalgia. (R. 20).  The Tenth Circuit has discussed fibromyalgia:

> Fibromyalgia, previously called fibrositis, is "a
> rheumatic disease that causes inflammation of the
> fibrous connective tissue components of muscles,
> tendons, ligaments and other tissue." Benecke v.

-9-

<u>Barnhart</u>, 379 F.3d 587, 589 (9th Cir. 2004).  It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue."  <u>Brosnahan v. Barnhart</u>, 336 F.3d 671, 672 n. 1 (8th Cir. 2003).  The disease is "poorly-understood within much of the medical community [and] ... is diagnosed entirely on the basis of patients' reports and other symptoms."  <u>Benecke</u>, 379 F.3d at 590.  Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body."  <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 107 (2d Cir. 2003); <u>see also</u> <u>Brosnahan</u>, 336 F.3d at 678 (objective medical evidence of fibromyalgia includes consistent trigger-point findings).  Fibromyalgia can be disabling.  <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir. 1998).

As described by the Seventh Circuit:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  <u>There are no laboratory tests for the presence or severity of fibromyalgia</u>. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character-- multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

<u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996)(emphasis added [by the Tenth Circuit]).

<u>Moore v. Barnhart</u>, 114 Fed. Appx. 983, 991, 2004 WL 2634571 (10th Cir. Nov. 19, 2004).

In the context of the discussion above, it is clear that there are no tests to determine the presence or severity of

fibromyalgia.   The disease is diagnosed upon the basis of patient reports and other symptoms.   Therefore, the ALJ's credibility finding (1) (that plaintiff is not credible because the objective medical evidence and clinical findings do not support the severity of symptoms alleged by plaintiff) reflects a misperception of the nature of fibromyalgia as discussed in Moore, 114 Fed. Appx at 991, 994-95, and a failure to "closely and affirmatively link" the evidence to the credibility findings in accordance with Hackett, 395 F.3d at 1173.   This is error.

The ALJ also discounted plaintiff's allegations because (3) plaintiff's "mental problems were often driven by alcohol abuse," and because (4) plaintiff "appears to have abused or attempted to abuse prescription drugs.   However, in stating these reasons the ALJ failed to explain how she concluded that these factors justify a finding of incredibility.   Her decision appears to assume that the mere fact of substance abuse indicates a propensity to exaggerate or to lie about the severity of symptoms.   This conclusion does not inevitably follow from the fact of substance abuse, and the decision does not explain what facts in this record support the conclusion that plaintiff's supposed substance abuse makes it more likely her allegations are not credible.

In his response brief, the Commissioner argues that the evidence supports the ALJ's findings, and points to evidence

tending to support a finding of alcohol abuse and "substance abuse." However, in a credibility determination, the question isn't whether plaintiff has engaged in "substance abuse," the question is whether plaintiff's allegations regarding her symptoms are credible. Neither the ALJ in the decision nor the Commissioner in his response brief has explained why a finding of "substance abuse" or of alcohol abuse supports an incredibility finding, either in this case particularly, or in disability cases in general.

Moreover, the Commissioner has not shown that the record evidence supports the findings of "substance abuse" upon which the ALJ's determination is based. The record is clear and supports the ALJ's finding that plaintiff abused alcohol. (R. 181-204, 259-61). The record is far less clear with regard to abuse of prescription drugs. The evidence cited in the Commissioner's response brief establishes that plaintiff took medication containing codeine while participating in an alcohol abuse program, and that this led to a relapse into alcohol abuse. (R. 182). Further, plaintiff's rheumatologist expressed concern with prescribing narcotic medications because of their addictive potential and a fear of causing another relapse into alcohol abuse. (R. 248, 256, 258). However, the rheumatologist recognized that plaintiff was taking Tylenol 3 (a medication containing codeine) which was prescribed by a physician, and he

coordinated his prescription of pain medication with plaintiff's mental health care providers. (R. 252-53, 254, 256-58). The Commissioner points to no record evidence that a physician indicated plaintiff was abusing prescription drugs, and the ALJ did not make such a finding. Rather, when the ALJ stated "the claimant <u>appears</u> to have abused or <u>attempted to abuse</u> prescription drugs at times," he <u>implied</u> that plaintiff abused prescription medication. (R. 23)(emphases added). The ALJ did not make a specific finding, and did not even cite record evidence in support of his insinuation of abuse. Insinuation and innuendo are insufficient to support a finding. The evidence does not support the ALJ's findings with regard to substance abuse, and does not support that plaintiff's alleged substance abuse makes her allegations of symptoms incredible.

The ALJ found that plaintiff's sporadic work history with low earnings does not show a motivation to work, but the record does not support this finding. Plaintiff alleges she became disabled on Feb. 28, 1994. (R. 18). Therefore, absent some explanation not present in the decision here, it would be unusual to rely upon a failure to work thereafter to support a finding of incredibility. The earnings record reveals that plaintiff worked continuously, and earned "qualifying quarters" (including work for the railroad) continuously between 1966 and 1994 with the exception of one quarter each in 1971, 1972, and 1974, two

-13-

quarters in 1977, and three quarters in 1979.  (R. 63-64).  For
the fifteen years prior to plaintiff's alleged onset date,
however, there is no indication of any break in work.  Although
the record reveals some breaks in work more than fifteen years
before the alleged onset date, this record as a whole cannot
fairly be characterized as indicating "sporadic work."

     Finally, the court agrees with the ALJ that the
(2) limitations alleged by plaintiff are not supported by the
ME's testimony and that (5) plaintiff's failure to apply for
benefits until ten years after her alleged onset date are factors
detracting from the credibility of plaintiff's allegations.
Although the court finds later in this opinion that the ALJ
failed to apply the correct legal standard in weighing the
medical opinions, including the opinion of the ME, Dr. Rubini,
that finding does not prevent the ALJ from relying on Dr.
Rubini's opinion as a factor in evaluating the credibility of
plaintiff's allegations.  Dr. Rubini opined that plaintiff's
impairments were not so severe as to prevent the performance of
substantial gainful activity.  (R. 807-08).  That opinion is
contrary to plaintiff's allegations, and may be used in
evaluating the credibility of plaintiff's allegations.

     Plaintiff argues that a ten-year delay in filing a claim for
benefits is not relevant to the credibility of plaintiff's
allegations of disabling symptoms.  She argues that the ALJ

improperly rejected plaintiff's explanation that the ten-year delay was because she had hoped that she would get better, but when she didn't, she finally applied for benefits.  Contrary to plaintiff's argument, the ten-year delay is relevant to the credibility determination.  It might properly be inferred from the ten-year delay in applying for benefits that during most of that period plaintiff did not consider herself to be disabled, but subsequently sought to secure a windfall in payment of benefits for an earlier period.  Although plaintiff provided an explanation for the delay, the ALJ is not obligated to accept every explanation of plaintiff at face value.  That is the purpose of a credibility determination, and the Commissioner is not required to accept plaintiff's explanation for each inconsistency revealed in the plaintiff's testimony or conduct.

As discussed above, substantial evidence does not support four of the six reasons given by the ALJ to discount the credibility of plaintiff's allegations of symptoms.

> Because a credibility assessment requires consideration
> of all the factors "in combination," [] when several of
> the factors relied upon by the ALJ are found to be
> unsupported or contradicted by the record, [a court is]
> precluded from weighing the remaining factors to
> determine whether they, in themselves, are sufficient
> to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original)(quoting Huston, 838 F.2d at 1132 n.7 (citation omitted)).  Remand is necessary for the

Commissioner to properly evaluate the credibility of plaintiff's allegations of symptoms.

**IV. Step Two**

Plaintiff claims that the ALJ erred when she failed to identify plaintiff's back impairment and headaches as "severe impairments" within the meaning of the Act. (Pl. Br. 18-19). The Commissioner argues that to be "severe" an impairment must significantly limit plaintiff's ability to perform basic work activities, and that the record does not show such significant limitations resulting from plaintiff's back impairment or headaches. (Comm'r Br. 3-4).

As the Commissioner's argument implies, an impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However, she must show more than the

-16-

mere presence of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

Plaintiff testified her pain immobilized her from time to time, caused problems with sleeping and daily activities, and caused a need to lie down.  (Pl. Br. 19)(citing hearing testimony at (R. 800-03).  She testified that her migraines caused vomiting and a need to lie down to relieve the migraine pain.  Id., citing (R. 804).  These symptoms, if credited, demonstrate more than a minimal affect on plaintiff's ability to do basic work activities--at least during the duration of the resulting pain and vomiting, and while suffering the direct effects of sleep disturbance.  Other than her own testimony, however, the evidence cited in plaintiff's brief demonstrates the presence of the impairments alleged, but does not show that they have more than a minimal affect on plaintiff's ability to do basic work activities.

Thus, whether back pain and migraines are "severe impairments" within the meaning of the Act in this case is dependent on a proper credibility determination regarding

-17-

plaintiff's allegations of symptoms.  On remand, and after making a proper credibility determination, the Commissioner must determine whether plaintiff has an impairment or combination of impairments including back pain and migraine headaches which is severe within the meaning of the regulations.

## V.   Evaluation of Medical Opinions

Plaintiff claims the ALJ erred in weighing the medical opinions of Dr. Iliff, a treating physician, and of Dr. Rubini, the ME.  Specifically, she argues that Dr. Iliff's opinion should have been given controlling weight, or the ALJ should have considered the lesser weight of which she found it worthy, and that Dr. Rubini's opinion was erroneously given near absolute weight.  The Commissioner argues that Dr. Iliff's opinion was not entitled to controlling weight, and that the ALJ properly asked for and considered the opinion of Dr. Rubini.  (Comm'r Br. 5-6, 9).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id.

-18-

§ 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2008).

"The regulations and agency rulings give guidance on the framework an ALJ should follow when dealing with treating source medical opinions." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(citing 20 C.F.R. § 404.1527(d)(2) and SSR (Social Security Ruling) 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id.(quoting SSR 96-2p). If the opinion is well-supported, the ALJ must then determine whether "the opinion is consistent with other substantial evidence in the record." Id. (citing SSR 96-2p).[3] "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2007). As the Ruling

---

[3]Both the ruling and the regulation phrase the second step of the inquiry in the negative: an opinion may be given controlling weight only if it is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); and SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2007).

explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id.

If the treating source opinion is not given controlling weight the inquiry does not end. Watkins, 350 F.3d at 1300. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.

> When a treating physician's opinion is inconsistent
> with other medical evidence, the ALJ's task is to
> examine the other physicians' reports "to see if [they]
> 'outweigh[]' the treating physician's report, not the
> other way around."  Reyes v. Bowen, 845 F.2d 242, 245
> (10th Cir. 1988).  The ALJ must give specific,
> legitimate reasons for disregarding the treating
> physician's opinion that a claimant is disabled.  Frey
> [v. Bowen], 816 F.2d [508,] 513 [(10th Cir. 1987)].

Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 289-90 (10th Cir. 1995).

Here, the ALJ discounted Dr. Iliff's opinions because Dr. Iliff's evaluation was completed nearly five years after plaintiff's date last insured, and because Dr. Iliff did not provide a "rational or clinical basis for his findings," but they were "simply a restatement of the claimant's subjective complaints." (R. 21).  She found that Dr. Iliff's opinions are not controlling.  Id.

The court finds that substantial evidence supports the decision not to give controlling weight to Dr. Iliff's opinion. The threshold for denying controlling weight is low.  The ALJ need only find evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating

source's] medical opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2008).

As the ALJ noted, Dr. Iliff's opinion was completed in Feb. 2007, nearly five years after plaintiff's date last insured in Mar. 2002. Moreover, although the opinion states it applies beginning Dec. 1993, it includes no explanation or reference to a basis in the medical records contemporaneous with that date to show that the opinion was relevant to 1993 or any time before plaintiff's date last insured. This fact, especially in light of Dr. Rubini's opinion that plaintiff was able to perform a range of light exertional activity, constitutes evidence from which a reasonable mind might conclude that plaintiff was not limited as suggested in Dr. Iliff's opinion. Thus, Dr. Iliff's opinion may not be given controlling weight.

The ALJ properly concluded she could not give controlling weight to Dr. Iliff's opinion, and stated that she had considered the doctor's findings. (R. 21). However, she did not explain what weight she assigned to the opinion. This also is error. Where the treating source's opinion is not entitled to controlling weight, it must still be weighed, as must all medical opinions in accordance with the regulatory factors enumerated in 20 C.F.R. § 404.1527. Watkins, 350 F.3d at 1300. The ALJ here did not do so.

In discussing the opinion of Dr. Rubini, the ME, the ALJ summarized the opinion, and stated that she had "considered the credible testimony of the medical expert." (R. 22).  However, as with the opinion of Dr. Iliff, she did not discuss the opinion in light of the regulatory factors for weighing medical opinions. She did not discuss of what weight she found the opinion worthy. She did not discuss the relative weight to be given Dr. Iliff's and Dr. Rubini's opinions.  She did not examine Dr. Rubini's opinion and explain how it outweighs the opinion of the treating physician, Dr. Iliff.  Remand is necessary for the Commissioner to properly weigh the medical opinions and explain the relative weight given to each opinion.

## VI.  Plaintiff's Remaining Allegations

In her final allegation of error, plaintiff claims the ALJ erred in assessing plaintiff's RFC by failing to perform a function-by-function assessment of plaintiff work-related abilities, failing to provide a narrative discussion citing specific medical facts to describe how the evidence supports each RFC conclusion, and failing to resolve inconsistencies between job descriptions in the Dictionary of Occupational Titles and the testimony of the vocational expert.  Proper assessment of RFC depends upon a proper evaluation of the medical opinions and of the credibility of plaintiff's allegations.  Therefore, it would be premature at this time to attempt to address plaintiff's

arguments regarding RFC assessment.  On remand the Commissioner must make an RFC assessment after first making a proper credibility determination, performing a proper step two analysis, and then properly evaluating and weighing the medical opinions of Dr. Iliff and Dr. Rubini.  Plaintiff may make her arguments regarding RFC assessment at that time.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 13th day of February 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**